WATSON, Judge:
 

 The Court is faced with a motion to intervene in this consolidated action. The action itself was brought by various importers and manufacturers of Japanese television receivers under 19 U.S.C. § 1516a to challenge the determination of the International Trade Commission (ITC) that an industry in the United States would be threatened with material injury if an antidumping order affecting television sets from Japan were to be modified or revoked.
 
 [1]
 

 The applicants for intervention are the Committee to Preserve American Color Television (COMPACT); the Imports Committee, Tube Division, Electronic Industries Association (the Imports Committee); and three unions, the Independent Radionic Workers of America, the International Brotherhood of Electrical Workers and the International Union of Electrical, Radio and Machine Workers (referred to as the three unions).
 

 Plaintiffs oppose the motion for intervention. The defendant United States took no position with respect to the Imports Committee, but supported the application of COMPACT and the three unions.
 

 Intervention in this action is strictly controlled by statute
 
 [2]
 
 and is limited
 
 *661
 
 to those who are “interested parties” and were “parties to the proceeding.” 28 U.S.C. § 2631(jXl)(B). That section provides in relevant part:
 

 (j)(l) Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of Court, intervene in such action, except that—
 

 (B) in a civil action under section 516A of the Tariff Act of 1930, only an interested party who is a party to the proceeding in connection with which the matter arose may intervene and such person may intervene as a matter of right; ...
 

 By virtue of 28 U.S.C. § 2631(k)(l) the term “interested party” is given the meaning set out in section 771(9) of the Tariff Act of 1930 (19 U.S.C. § 1677(9)). The latter provision reads as follows:
 

 (9) INTERESTED PARTY. — The term “interested party” means—
 

 (A) a foreign manufacturer, producer, or exporter, or the United States importer, of merchandise which is the subject of an investigation under this subtitle or a trade or business association a majority of the members of which are importers of such merchandise,
 

 (B) the government of a country in which such merchandise is produced or manufactured,
 

 (C) a manufacturer, producer, or wholesaler in the United States of a like product,
 

 (D) a certified union or recognized union or groups of workers which is representative of an industry engaged in the manufacture, production, or wholesale in the United States of a like product, and
 

 (E) a trade or business association a majority of whose members manufacture, produce, or wholesale a like product in the United States.
 

 Finally, the term “like product” is defined in section 771(10) of the Tariff Act of 1930, (19 U.S.C. § 1677(10)) as a product “which is like, or in the absence of like, most similar in characteristics and uses with, the article subject to an investigation under this title.”
 

 The second phrase of the standard for intervention — “party to the proceeding” is not further defined in the statute.
 

 The Court finds that although the applicants may have interests affected by this judicial review they fall short of meeting the strictly defined statutory requirements for standing to intervene. COMPACT and the Import Committee lack standing because they are not “interested parties” within the meaning of the statute. The three unions lack standing because they did not become parties to the administrative proceeding within the meaning of the statute.
 

 The members of COMPACT, as listed in the motion papers, are as follows:
 

 Allied Industrial Workers of America, International Union
 

 American Flint Glass Workers Union of North America
 

 Communications Workers of America Corning Glass Works
 

 Glass Bottle Blowers’ Association of the United States and Canada
 

 Independent Radionic Workers of America
 

 Industrial Union Department, AFL-CIO
 

 International Association of Machinists
 

 International Brotherhood of Electrical Workers
 

 International Union of Electrical, Radio
 

 & Machine Workers Owens-Illinois, Inc.
 

 United Furniture Workers of America
 

 United Steelworkers of America
 

 Wells-Gardner Electronics Corp.
 

 Of this group of fourteen, only four are presented as having a direct involvement with finished television receivers. They are the three unions (who are also making a motion to intervene in their independent capacities) and Wells-Gardner Electronics Corp. The remainder are corporations or
 
 *662
 
 unions involved in the production of components or materials.
 

 As a whole, COMPACT does not fit any of the definitions of “interested party.” It is not a union or a group of workers because it includes corporate employers. This eliminates definition (D). It is not a trade or business association because of its union component. This eliminates definition (E). In any event, whatever its composite nature, COMPACT, in its entirety, does not have either the representative quality of a union in the specific industry engaged in the production of a like product or the involvement of an association of businesses in the manufacture of a like product.
 

 In the context of this statute, the like product must be television receiving sets, because they are the product subject to investigation. The industry must be that industry engaged directly in the production of television sets because that is the industry whose injury is germane. Cf.
 
 United Shoe Workers v. Bedell,
 
 506 F.2d 174 (D.C. Cir.1974). From this standpoint only a minority of COMPACT’S members are union or worker representatives of the industry which produces television sets or actual manufacturers of the sets.
 

 The Imports Committee is presented in the motion as an association of manufacturers in the United States television industry. Plaintiffs rely on an affidavit of the Chairman of the Imports Committee
 
 [3]
 
 to show that it includes the following five companies:
 

 Clinton Electronics
 

 Corning Glass Works
 

 Lancaster Glass Corporation
 

 Owens Illinois
 

 GTE Sylvania Inc.
 

 Plaintiffs point out that only GTE Sylvania ever manufactured television sets, and even then it sold its production facilities in 1980, prior to the administrative determination which is the subject of this action. Even if GTE Sylvania were to be considered a manufacturer of television sets, the Import Committee still does not have a majority of members who manufacture a like product. It is therefore eliminated from definition (E).
 

 This leaves the three unions, who assertedly represent the overwhelming majority of workers engaged in the manufacture and assembly of finished television receivers and whose status as “interested parties” is not disputed. However, plaintiffs interpose the objection that the unions were not parties to the proceeding within the meaning of the statute.
 

 The defendant United States takes the delicate position that, while it does not urge that individual members of an umbrella organization always be considered parties for purposes of intervention in a later judicial proceeding, it finds justification in this case. It stresses the fact that the interests of the unions are coextensive with those of COMPACT, that they joined together with others solely for the purposes of the proceeding, that they were represented by the same attorneys and resemble a partnership in which the action of one binds the others.
 

 These are arguments which have a vaguely equitable tone. However, this is not a matter in which the statute can be adjusted to fashion an equitable remedy in a particular case. See,
 
 Loveladies Property Owners Ass’n. Inc.
 
 v.
 
 Raab,
 
 430 F.Supp. 276 (D.N.J.1975)
 
 aff’d,
 
 547 F.2d 1162 (3d Cir. 1976),
 
 cert. denied,
 
 432 U.S. 906, 97 S.Ct. 2949, 53 L.Ed.2d 1077 (1977). In these circumstances the Court is not at liberty to give the term “party” an expansive meaning, even if it were to deemphasize the I.T.C. rule which defines a party as one who has entered an appearance,
 
 [4]
 
 a requirement which the three unions did not satisfy.
 

 The term “party” must have a consistent meaning in the administration of this law. If an individual member of an umbrella organization could assert the rights of a party for purposes of intervention, then a host of inconsistencies may arise. For example, if the administrative agency reaches a certain determination regarding dumping
 
 *663
 
 margins under section 751(a)(2)(B), (19 U.S.C. § 1675(a)(2)(B)) or makes a modification under section 751(c), (19 U.S.C. § 1675(c)) and the determination is acceptable to only some of the “interested party” members of ihe umbrella organization, we face the possibility that some of them may bring an action to challenge the determination or intervene on the side of a challenger while others may intervene on the side of the government. The Court is of the opinion that Congress intended the statutory provisions for participation in the administrative proceeding and judicial review to benefit unitary parties and not to allow the expedient fragmentation of umbrella organizations.
 

 In the same vein, since the administrative proceeding is an investigation, there seems to be no good reason to distinguish between parties to the proceeding and the more frequently used “parties to the investigation.” Thus the adoption of a standard which would allow intervention in this judicial proceeding would lead to further difficulties. The Court refers to problems which might arise from differences of opinion between members of an umbrella group in such matters as the waiver and agreement provision of § 733(b)(2), (19 U.S.C. § 1673b(b)(2)),
 
 [5]
 
 the request for review of suspension in § 734(h), (19 U.S.C. § 1673c(h)(l)
 
 [6]
 
 and the request for hearing § 774(a), (19 U.S.C. § 1677c).
 
 [7]
 

 All this strongly indicates that the administrative and judicial review provisions of the law can only operate in a consistent manner if the term “party” is limited to those who have an independent and unitary participation in the administrative proceeding. It follows that under this statute even an “interested party” may fail to acquire the right to intervene in a judicial review if it confines its participation in the administrative proceeding to membership in an association.
 

 For the reasons discussed, the Court must deny the motion to intervene in all respects, and it is so Ordered.
 

 [1]
 

 . The determination being challenged was published as Television Receiving Sets from Japan, Inv. No. 751-TA-2, USITC Pub. 1153 (1981), 46 Fed.Reg. 37,702 (June 24, 1981). The determination was made in a review conducted under section 751(b) of the Tariff Act of 1930, 19 U.S.C. § 1675(b). The subject of the review was the 1971 finding of dumping with respect to television sets from Japan. T.D. 71-75 (1971).
 

 [2]
 

 . There is no permissive intervention in this matter. See H.R.Rep.No.96-1235, 96th Cong., 2d Sess. 52 (1980) U.S.Code Cong. & Admin. News 1980, p. 3729. The existence of a specific provision governing intervention also precludes the applicability of any other provisions or stat
 
 *661
 
 utes such as 28 U.S.C. § 2631(i) or the Administrative Procedure Act, 5 U.S.C. § 702.
 

 [3]
 

 . The affidavit is appended to plaintiffs’ memorandum as Exhibit A.
 

 [4]
 

 . 19 C.F.R. § 207.2(i)(198I).
 

 [5]
 

 . (b) PRELIMINARY DETERMINATION BY ADMINISTERING AUTHORITY.—
 

 (2) PRELIMINARY DETERMINATION UNDER WAIVER OF VERIFICATION.— Within 75 days after the initiation of an investigation, the administering authority shall cause an official designated for such purpose to review the information concerning the case received during the first 60 days of the investigation, and, if there appears to be sufficient information available upon which the preliminary determination can reasonably be based, to disclose to the petitioner and any interested party, then a party to the proceedings that requests such disclosure, all available nonconfidential information and all other information which is disclosed pursuant to section 777. Within 3 days (not counting Saturdays, Sundays, or legal public holidays) after such disclosure, the petitioner and each party which is an interested party described in subparagraph (C), (D), or (E) of section 771(9) to whom such disclosure was made may furnish to the administering authority an irrevocable written waiver of verification of the information received by the authority, and an agreement that it is willing to have a preliminary determination made on the basis of the record then available to the authority. If a timely waiver and agreement have been received from the petitioner and each party which is an interested party described in sub-paragraph (C), (D), or (E) of section 771(9) to whom the disclosure was made, and the authority finds that sufficient information is then available upon which the preliminary determination can reasonably be based, a preliminary determination shall be made within 90 days after the commencement of the investigation on the basis of the record established during the first 60 days after the investigation was commenced.
 

 [6]
 

 . (h) REVIEW OF SUSPENSION.—
 

 (1) IN GENERAL. — Within 20 days after the suspension of an investigation under subsection (c) of this action, an interested party which is a party to the investigation and which is described in subparagraph (C), (D), or (E) of section 771(9) may, by petition filed with the Commission and with notice to the administering authority, ask for a review of the suspension.
 

 [7]
 

 . SEC. 774. HEARINGS.
 

 (a) INVESTIGATION HEARINGS. — The administering authority and the Commission shall each hold a hearing in the course of an investigation upon the request of any party to the investigation before making a final determination under section 705 or 735.