SPECIAL COMMODITY GROUP ON NON-RUBBER FOOTWEAR FROM BRAZIL, AMERICAN ASSOCIATION OF EXPORTERS AND IMPORTERS, Plaintiff,

v.

UNITED STATES, Defendant,

and

Footwear Industries of America, Inc., Intervenor.

Court No. 85–4–00579.

United States Court of International Trade.

Oct. 3, 1985.

Plaia & Schaumberg, Washington, D.C. (Herbert S. Shelley and Joel D. Kaufman, Washington, D.C., on the motion) for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Velta A. Melnbrencis, New York City, on the motion) for defendant.

Collier, Shannon, Rill & Scott, Washington, D.C. (Michael R. Kershow and Lauren R. Howard, Washington, D.C., on the motion) defendant for intervenor.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge.

Before the Court is a motion to intervene in an action by Special Commodity Group on Non-Rubber Footwear from Brazil (plaintiff) challenging the Commerce Department's final determination imposing a countervailing duty on rubber footwear from Brazil. Plaintiff brought the action under section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a. Proposed intervenor is Footwear Industries of America, Inc. (FIA), seeking to intervene on the side of defendant. The issue presented is whether a trade association may intervene in a section 516A action when it qualified as an "interested party" during the administrative proceedings but by the time action was commenced its composition had changed so that a majority of its members were not manufacturers, producers, or wholesalers of a like product.

### FACTS

FIA is a trade association which, as of June 28, 1985, was comprised of 68 manufacturers of non-rubber footwear and 76 suppliers to the industry. It was formed by the consolidation of American Shoe Cen-

ter, Inc., and American Footwear Industries, Inc. (AFIA). AFIA was the original petitioner in the proceeding which resulted in the countervailing duty order challenged by plaintiff. After consolidation, FIA continued to participate in the review proceeding. At the time of FIA's participation in the review proceeding, a majority of its members were manufacturers of non-rubber footwear.

## OPINION

The right to intervene in a section 516A action is based on 28 U.S.C. § 2631(j)(1)(B), which provides that

(1) Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that

... (B) in a civil action under section 516A of the Tariff Act of 1930, only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right.

 · The statute defines "interested party" as including "a trade or business association a majority of whose members manufacture, produce, or wholesale a like product in the U.S." 19 U.S.C. § 1677(9)(E), incorporated by reference in section 2631(k)(1). Thus, to intervene in a section 516A action as a matter of right, a domestic trade association must have been a party to the administrative proceedings and a majority of its members must manufacture, produce, or wholesale a like product. The statute does not allow permissive intervention.

The parties here do not dispute that FIA was a party to the proceedings. It is also clear that a majority of FIA's members are now suppliers. Plaintiff therefore contends that FIA is not an interested party within the meaning of section 2631(j)(1)(B) because a trade association must have a majority of its members directly involved with the manufacture, production, or

wholesale of a like product at the time the action was commenced. The Court does not read section 2631(j)(1)(B) so narrowly.

In *American Grape Growers v. United States,* 9 CIT ——, 604 F.Supp. 1245 (1985), the court allowed an association to intervene, although only one-half of its members produced a like product, clearly not a "majority." The court concluded from the legislative history and the purpose of the statute that to construe the statute narrowly in that case would defeat the intention of Congress. The court reasoned that

the standing requirement for associations was primarily designed to keep out broad-spectrum, general organizations who would always have a few members with direct interest in the product under investigation. The "majority" requirement in the Trade Agreement Act of 1979 was explained as follows in the report of the Senate Committee on Finance:

This limitation is believed to fairly delimit those groups with sufficient interest to always be considered interested parties. An association representative of importers generally, or business generally, would not be considered an interested party under this limitation, although a sub-group of such an association may qualify. S.Rep. 96–249, 96th Cong., 1st Sess. 90 (1979).

In the opinion of the Court, the remedial purpose of this provision, intended as it was to set a fair standard for access to judicial review, justifies the conclusion that an organization should have standing in the peculiar situation when interested parties are *half* of the membership. At the midpoint, the proportion of membership with undeniable interest is sufficient to fall within the intention of the law.

*Id.* at ——, 604 F.Supp. at 1249.

 The Court in this case holds that the remedial purpose of the statute justifies the conclusion that a trade organization should have standing when, at the administrative proceeding, a majority of its mem-

bers manufacture, produce, or wholesale a like product, but, by the time action is commenced, its composition has changed so that only 47% of its members manufacture, produce, or wholesale a like product.[1] Congress was concerned that an organization with only a slight interest should not be allowed to intervene. The peculiar facts of this case clearly demonstrate that FIA has a strong interest in this action and has participated in the administrative proceedings as a party within the meaning of the statute. Under these circumstances, FIA's composition at the administrative proceeding is sufficient to place it within the intention of the statute.

This conclusion is not contrary to the holding in *Matsushita Electric Industrial Co. v. United States*, 2 CIT 254, 529 F.Supp. 664 (1981). There the court did not allow individuals to intervene who had been members of an umbrella organization that participated in the administrative proceeding. The court reasoned that "party" must have the same meaning at the administrative proceeding as before the court. If individual members were allowed to intervene in a court action, without having noted their individual appearance at the administrative level, the court was concerned that members of the same organization might try to intervene on opposite sides in a court case because of their differing interests. The court concluded that "Congress intended the statutory provisions for participation in the administrative proceeding and judicial review to benefit unitary parties and not to allow the expedient fragmentation of umbrella organizations." *Id.* at 258, 529 F.Supp. at 669.

No similar concern exists here. The umbrella organization that was a party to the proceeding is the same party appearing in court. There is no danger of fragmentation. FIA is also not a broad-spectrum organization. For these reasons, the Court concludes that section 2631(j)(1)(B) encompasses the organization before the Court,

and therefore grants the motion to intervene as a matter of right. Because the Court grants the motion, it does not reach FIA's alternative motion that its individual members be allowed to intervene on their own behalf.

### ORDER

Upon reading and filing the Motion to Intervene by Footwear Industries of America (FIA), plaintiff's response thereto, and upon all other papers and proceedings had herein, it is hereby

ORDERED, ADJUDGED and DECREED that:

Footwear Industries of America, Inc. be permitted to intervene as a defendant.

---

1. The Court also notes that the manufacturer members of FIA contribute 75% of the organization's dues.